UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

MELISSA LUCAS AND
JOBS FIRST INDEPENDENT EXPENDITURE
POLITICAL ACTION COMMITTEE

*Plaintiffs*

v.

Civil Action No.:
1:14-CV-14338-NMG

MARTHA COAKLEY AND
BRIAN MANNAL

*Defendants*

## DEFENDANT'S OPPOSITION(S) TO PLAINTIFFS' MOTION FOR AN EMERGENCY TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

NOW COMES Defendant, Brian Mannal, for the purpose of filing his opposition(s) to the Plaintiffs' motion for an Emergency Restraining Order or Preliminary Injunction to preclude the Clerk Magistrate of the Falmouth District Court from convening a Clerk's Hearing on December 18, 2014, on the Defendant's Application for a Criminal Complaint against Plaintiff Melissa Lucas and the Jobs First Independent Expenditure Political Action Committee (hereinafter Jobs First IE PAC) alleging a violation of M.G.L. c. 56, §42. (See Exhibit 1: Application for Criminal Complaint and Statement of Facts in Support of Application for Criminal Complaint, attached hereto). In support thereof, Defendant states the following:

## I. FACTS

1.       In 1946, the Massachusetts legislature enacted M.G.L. c. 56, §42, which states that:

> No person shall make or publish, or cause to be made or published, any false statement in relation to any candidate for nomination or election to public office, which is designed or tends to aid or to injure or defeat such candidate.

> No person shall publish or cause to be published in any letter, circular, advertisement, poster or in any other writing any false statement in relation to any question submitted to the voters, which statement is designed to affect the vote on said question.

> Whoever knowingly violates any provision of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months.

2.      Said statute is an active and valid Massachusetts criminal statute, and the Constitutionality the law has never been tested.

3.      Defendant Brian Mannal is a public figure by virtue of his elected status as a state representative in the Massachusetts House of Representatives. Brian Mannal is also a general practice attorney with a private law practice located in Barnstable, Massachusetts.

4.      Plaintiff Melissa Lucas (i.e., Defendant in Mannal's Application for a Criminal Complaint) is the Chairwoman and Treasurer of the Jobs First IE PAC. What's more, Melissa Lucas is the only individual on record with the Massachusetts Office of Campaign and Political Finance and/or listed on the Jobs First IE PAC's Form CPF 101 IEPC: Statement of Organization Independent Expenditure Political Action Committee (See Exhibit 2, attached hereto).

5.      Upon information and belief, as Chairwoman of the Jobs First IE PAC, Lucas has oversight of and is the individual responsible for the actions and activities of the political action committee. Moreover, as Treasurer of the PAC, Lucas is responsible for the payment of PAC expenditures. Per the Form CPF 101 IEPC: Statement of Organization, "No expensures shall be made for, or on behalf of, a political committee without the authorization of the chairman or treasurer, or their designated agents." Accordingly, Ms. Lucas is responsible for making or publishing (or causing to be made or published) the PAC's electioneering communications.

6.      Prior to the recent election in November 2014, Plaintiffs Melissa Lucas and the Jobs First IE PAC made and published (or caused to be made and published) an electioneering communication (i.e., mass mailer) that contained false and defamatory statements of fact about the Defendant. Specifically, the Plaintiff's electioneering communication alleged that Brian Mannal was "helping himself" by filing legislation to provide indigent sex offenders with notice of their right to public counsel during reclassification hearings, and placing his own financial

interests above the interests of those he represents in the legislature (See Exhibit 3: Jobs First IE PAC Electioneering Communication Against Brian Mannal, attached hereto).

7.     The plain meaning of the statement on said electioneering communication that [Brian Mannal] is "helping himself" is that the Defendant is a corrupt individual who sought to profit (or actively profits as an attorney) from legislation that he filed as a state representative.

8.     The Plaintiffs' electioneering communication also included the image of a misleading newspaper headline (i.e., Pol aiding sex con got defense cash, Boston Herald, Tuesday, February 26, 2013) directly below the aforementioned false and defamatory statement, as well as the advisory statement to "vote against Brian Mannal."

9.     Plaintiffs inclusion of the newspaper headline in the electioneering communication was intended to mislead voters about the Defendant's conduct in office and/or to provide support for the unfounded allegation that the Defendant was "helping himself". Likewise, the statement "vote against Brian Mannal" was intended to dissuade voters from supporting the Defendant's candidacy for re-election on the grounds presented by Lucas and the Jobs First Independent Expenditure PAC.

10.     The referenced Boston Herald article contains information that clarifies the fact that the Defendant has never represented indigent defendants at sex offender hearings. (See Exhibit 4: Pol aiding sex con got defense cash newspaper article, Boston Herald, Tuesday, February 26, 2013, attached hereto). Specifically, paragraph 3 of said newspaper article states:

> CPCS general counsel Lisa Hewitt said Mannal has not represented indigent clients at sex offender hearings. The state's conflict-of-interest law allows state employees, including legislators, to work for CPCS as long as they file financial interest disclosure forms with the state Ethics Commission.

11.     Given the fact that the Plaintiffs included the article's headline in their electioneering communication, there can be no dispute that the Plaintiffs were familiar with the content of the article itself. Accordingly, by including the headline of that specific Boston Herald article, the Plaintiffs have demonstrated actual knowledge that the Defendant was not "helping himself" by filing legislation to provide indigent defendants with notice of their right to public counsel before

the Sex Offender Registry Board, as the information that he has never handled a sex offender case was contained within the text of the article. What's more, the Plaintiffs knew or should have known that even if the Defendant was certified by CPCS to accept and handle such cases, doing so would not be a conflict of interest provided that he file a disclosure with the state Ethics Commission.

12.     The Plaintiffs purpose for publishing an electioneering communication that included the statement that the Defendant was "helping himself and/or the inclusion of the misleading Boston Herald newspaper article headline and advisory statement to "vote against Brian Mannal" were clearly intended to malign the Defendant's character and reputation, as well as injure his candidacy for re-election in violation of M.G.L. c. 52, §6.

13.     On or about October 16, 2014, the Plaintiffs' electioneering communication was distributed to thousands of voters in the 2nd Barnstable District, thereby injuring Brian Mannal's reputation in the community both as a honest legislator and attorney at law.

14.     On October 21, 2014, the Defendant filed an Application for a Criminal Complaint against Melissa Lucas and the Jobs First IE PAC in Barnstable District Court. Shortly thereafter, said Application for a Criminal Complaint was transferred to the Falmouth District Court *en banc*.

15.     On October 21, 2014, in an effort to clear his good name, the Defendant communicated the act of his filing of an Application for a Criminal Complaint to local media, noting that irreparable damage had already been done to his public reputation in the community, candidacy for re-election, and private law practice.

16.     Following the Defendant's filing of an Application for a Criminal Complaint, the Plaintiffs' speech was not chilled. In fact, the Plaintiffs continued to support the content of their electioneering communication and commented to multiple media sources (through a spokesman for the Jobs First IE PAC) that, "Brian Mannal needs to stop filing frivolous lawsuits. . ." (See Exhibit 5: Cape legislator fights back against PAC charges newspaper article, Cod Times Times, October 22, 2014, attached hereto).

4

17.     On November 4, 2014, the Defendant was re-elected to the office of state representative for the 2nd Barnstable District by a margin of 205 votes. Upon information and belief, Mannal's victory was the closest contested race for the office in the history of the district.

18.     Since the October 21, 2014, on multiple occasions, the Plaintiffs have sought to dismiss, delay, or continue the Clerk's Hearing on the Defendant's Application for a Criminal Complaint that is pending in Falmouth District Court. Heretofore, in addition to formally requesting a continuance of the matter, the Plaintiffs have filed (or attempted to file) a Motion to Dismiss said Application with the Criminal Clerk of the Falmouth District Court. (See Exhibit 6: Motion to Dismiss Application for Criminal Complaint dated October 27, 2014, attached hereto).

19.     Upon information and belief, an Application for a Criminal Complaint based on an active Massachusetts criminal statutes (i.e., M.G.L. c. 56, §6) is properly tested for probable cause via a Clerk's Hearing in the District Court of the Trial Court. As such, an application cannot be dismissed by motion without a hearing or the consent of the moving party prior to a Clerk's Hearing on the merits of said Application. Hence, the Falmouth District Court did not entertain the Plaintiffs' Motion and a Clerk's Hearing on the Defendant's underlying Application for a Criminal Complaint was first scheduled for mid-November and re-scheduled (at the Plaintiffs' request) to December 18, 2014.  (See Exhibit 7: Docket Number 1489AC000620, Notice of Next Event, attached hereto).

20.     On December 5, 2014, the Plaintiffs filed a Complaint for Declaratory Judgment and Injunctive Relief and Emergency Motion for Temporary Restraining Order or Preliminary Injunction in the United States District Court for the District of Massachusetts, arguing that M.G.L. c. 56, §42 is unconstitutional and that a Clerk's Hearing on the Defendant's Application for a Criminal Complaint will cause them irreparable harm.

21.     On Tuesday, December 8, 2014, Defendant Brian Mannal was made aware of Plaintiffs Complaint and Motion when the Boston Herald published an article regarding the same on Page 15 of the daily paper. (See Exhibit 8: Free Speech Not So Free In Election newspaper article, Boston Herald, December 8, 2014, attached hereto).

22.     On Thursday, December 11, 2014, Defendant Brian Mannal received a telephone voicemail from the Office of Attorney Martha Coakley (i.e., the other named Defendant in the Plaintiffs' Complaint). Said voicemail was for the purpose of informing Brian Mannal that Massachusetts Attorney General Martha Coakley had been served with the Plaintiffs Complaint, as well as to relay that an emergency hearing on the Plaintiffs Motion was scheduled to be heard in U.S. District Court on December 17, 2014.

23.     Immediately upon hearing this information, Brian Mannal contacted the U.S. District Court for the District of Massachusetts to confirm the status of the emergency hearing and the Defendant was provided 24 hours to file this written opposition to the Plaintiffs' Motion for a Temporary Restraining Order or Preliminary Injunction.

24.     To date, the Plaintiffs have not served Defendant Brian Mannal with a true copy of the Complaint and Motion, as is required by the Federal Rules of Civil Procedure.

## II. ARGUMENT IN OPPOSITION TO PLAINTIFF'S MOTION

The U.S. Supreme Court often has struggled to determine what exactly constitutes protected speech. Whilst the interest in protecting "political speech" is well established, the Court has never definitively addressed the issue of what level of protection should be afforded non-political (defamatory) speech in the context of electioneering communications, particularly when said defamatory speech is published alongside otherwise protected political speech. More specifically, the Court has not directly addressed the issue of whether the Constitution affords protection to those who knowingly make and publish false statements of fact about a public official in the context of an electioneering communication, when said false statements of fact are positioned within the same electioneering communication beside protected political speech.

Assuming, *arguendo*, that because Brian Mannal is a public official the "actual malice" standard articulated in case of *New York Times v. Sullivan* governs this matter, then the Defendant must prove that the defamatory statements were made with "actual malice" -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *New York Times v. Sullivan*, 376 U.S. 254, 279 (1964).

In *Gertz v. Robert Welch, Inc.*, the U.S. Supreme Court considered the issue of actual malice and helped to shape the definition of reckless disregard for the truth. There, in weighing the actions of the Court of Appeals for the Seventh Circuit, the Court noted that "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth. Rather, the publisher must act with a "`high degree of awareness of . . . probable falsity.'" *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

In *St. Amant v. Thompson*, the Court equated reckless disregard of the truth with subjective awareness of probable falsity: "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

The Defendant respectfully submits that a high degree of awareness of probable falsity is affirmatively established in the instant case, insofar as it can be demonstrated that the Plaintiffs had knowledge that Brian Mannal was not "helping himself" and that they knowingly published said false and defamatory statement for the purpose of tarnishing the Defendant's character and injuring his candidacy for re-election.

In other words, the content of the newspaper article that the Plaintiffs referenced in an effort to reinforce the false statement that the Defendant was "helping himself" is, in and of itself, proof that the Plaintiffs had actual knowledge of the fact that Brian Mannal had not helped himself, and further proves that the Plaintiffs acted with actual malice and in reckless disregard of the truth by publishing the false and defamatory statements to the contrary.

The Plaintiffs claim through counsel that the electioneering communication is not defamatory per se, and that they simply "asked voters to connect the dots between Mannal's support for legislation that enabled sex offenders to petition the court for reduced monitoring requirements, the appointment of criminal defense attorneys to assist them in this endeavor using public funds and the fact that Mannal is a criminal defense attorney who receives public funds to represent individuals charged with crimes". (Refer to Plaintiff's Motion for Emergency Restraining Order, Page 3, Paragraph 12). The Defendant implores this Honorable Court to scoff at this argument on the grounds that willfully ignores (and/or plainly fails to acknowledge) the real "facts" of the case. That is, that the operative language which gives rise to the Defendant's Application for a Criminal Complaint are the Plaintiffs' statement(s) that Brian Mannal is

"helping himself". The Defendant begs the court to view this language for what it is: an unfounded defamatory accusation of political corruption and intentional lie that was knowingly published by the Plaintiffs for the purpose of undermining the integrity of our democratic process.

The body of case law related to the protection of political speech has repeatedly clarified the court's position that, "Lies have no place in the political arena and serve no purpose other than to undermine the integrity of the democratic process." *Susan B. Anthony List, et al., v. Ohio Elections Comm'n*, Case No. 1:10-CV-720, 2014 U.S. Dist. LEXIS 127382.

Here, it should be noted that the Plaintiffs argument that the constitutionality of M.G.L. c. 56, §42 is "dubious" particularly when compared to allegedly "similar statues in Ohio and Minnesota" is misguided, insofar as the facts of the instant case differ greatly from those which are presented in the Ohio and Minnesota cases. Likewise, the Defendant respectfully submits that the process of adjudicating complaints concerning false statements against public officials in the context of political campaigns in Ohio and Minnesota was/is significantly different than the process that is adhered to in the Commonwealth Massachusetts.  The Defendant concedes that complaints brought under M.G.L. c. 56, §42 are rare, however, he posits that the rarity of such complaints should not serve as the basis for undermining an otherwise active and valid Massachusetts statue intended to safeguard the integrity of our democratic process. What's more, the Defendant notes that applications for criminal complaints under the aforementioned Massachusetts statute are not unheard of. In fact, in 2010, the then-Republican nominee for U.S. Senator from Massachusetts, Scott Brown, filed a complaint under M.G.L. c. 56, §42 against the Massachusetts Democratic Party in the weeks leading up to the special election against the then-Democrat nominee for U.S. Senator from Massachusetts, Attorney General Martha Coakley.

In the case of Scott Brown's 2010 Application for a Criminal Complaint against the Massachusetts Democratic Party, unlike the instant case, the complainant (Brown) objected to the language that was used to describe his legislative record. Here, it is important to the questionable electioneering communication did not contain any false statements of fact about his conduct as a legislator or private business dealings. That is, Scott Brown was not accused of being corrupt. (See Exhibit 9: Massachusetts Democratic Party's electioneering communication against Scott Brown, attached hereto).

By contrast, in the instant case, the Defendant does not protest or object to the subjective statements that were made by Lucas and Jobs First IE PAC concerning the legislation he filed, but rather to the overt (and unfounded) accusations of political corruption that have been unjustly levied against him.

Notwithstanding, as previously stated, in *Susan B. Anthony List v. Ohio Elections Committee*, the adjudicatory process under which political speech complaints were brought in Ohio differs greatly from the system that is employed in the Commonwealth of Massachusetts. Specifically, under the now-defunct Ohio law there was a requirement that such complaints be submitted for review to a panel that was charged with reviewing the questionable statements and regulating political speech. Here, there is no such system of adjudication related to political speech. It is worth noting that that the Order of the Court in the above-referenced case begins with the statement: "We are note arguing for a right to lie. We're arguing that we have a right not to have the truth of our political statements be judged by the government." Here, the Defendant respectfully submits that Melissa Lucas and Jobs First IE PAC are, in fact, arguing for the right to lie. What's more, unlike the case of *Susan B. Anthony List v. Ohio Elections Commission*, if probable cause is found by the Clerk Magistrate of the Falmouth District Court on December 18, 2014, then the Defendant the truth of the Plaintiffs' statements would, ultimately, not be judged by the government, but rather by a jury of their peers.

The Defendant argues that there can be only one interpretation of the false statements made by the Plaintiffs that Brian Mannal was/is "helping himself" and the statement that he places his "interests before voters", and that is to falsely label the Defendant a corrupt legislator and attorney who seeks and/or sought to place his private/personal financial interests before the interests of his constituents. The Defendant concedes that the Plaintiffs have a constitutionally protected right to make statements about the legislation he filed, even if such statements are subjectively false. However, the Defendant stands by the common sense rule that said constitutional protections do not permit the publication of false statements of fact about a public official's conduct and private business dealings if they are made knowingly or in reckless disregard of the truth and for the sole purpose of injuring his character and/or attempting to defeat his candidacy.

In short, the Defendant argues that allowing the Plaintiffs Motion will, effectively, open the floodgates of free speech so wide that it will entice the Plaintiffs (and other similarly situated political action committees and individuals) to publish all manners of untruths and intentional lies about honest and decent public officials, and thereby, wreck havoc upon the integrity of our democracy.

Accordingly, the Defendant argues that for the Plaintiffs to suggest the First Amendment protects and/or permits them to knowingly make false statements of fact which are unrelated to the protected political speech contained within their electioneering communications is to suggest that they (and other similarly situated PACs and individuals) are now free to make bold-faced lies about a public official's public and private business dealings, when such statements are unsupported by any factual information and/or made in reckless disregard of the truth.

### III. CONCLUSION

WHEREFORE, the Defendant hereby reiterates his opposition and/or objection to the Plaintiffs' Motion, and further begs this Honorable Court to refrain from issuing an preliminary injunction to restrain the Clerk Magistrate of the Falmouth District Court from convening a hearing to determine if probable cause exists to support the Defendant's application for a criminal complaint against Melissa Lucas and the Jobs First Independent Expenditure Political Action Committee under M.G.L. c. 56, §42. The Defendant hereby reserves his right to raise additional arguments and defenses at the time of the emergency hearing on the Plaintiffs' Motion for a Preliminary Injunction, including defenses and arguments related to inadequate notice and service of process in relation to this matter.

Dated: December 12, 2014

Respectfully Submitted,

Brian R. Mannal, Esquire
BBO # 672667
Law Office of Brian Mannal
297 North Street, Suite 230
One Financial Place, Bld. 2, 3rd Fl.
Hyannis, MA 02601
(508) 775-1177
brianmannal@gmail.com