**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| **JOBS FIRST INDEPENDENT EXPENDITURE POLITICAL ACTION COMMITTEE and MELISSA LUCAS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MARTHA COAKLEY, Attorney General for the Commonwealth of Massachusetts, and BRIAN MANNAL,**<br><br>**Defendants.** | **Civil Action No. 14-14338-NMG** |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves a First Amendment challenge to a Massachusetts statute that criminalizes false statements made in relation to any candidate running for public office. The suit is brought by Jobs First Independent Expenditure Political Action Committee ("Jobs First") and the Treasurer of Jobs First, Melissa Lucas ("Lucas") (collectively, "plaintiffs") against Massachusetts Attorney General Martha Coakley ("Coakley") and Brian Mannal ("Mannal"), who was, at all pertinent times, a candidate for public office (collectively, "defendants").

Pending before the Court is plaintiffs' emergency motion for a temporary restraining order or preliminary injunction to enjoin the Clerk Magistrate of the Falmouth District Court from

holding a hearing on December 18, 2014 related to an application for a criminal complaint brought by Mannal against Lucas for making false statements about him prior to the election in November, 2014. Mannal has also filed a motion to dismiss plaintiffs' complaint based on Younger abstention principles.

For the reasons that follow, the Court will deny both pending motions.

## I. Background

### A. M.G.L. c. 56, § 42

In 1946, M.G.L. c. 56, § 42 was enacted by the Massachusetts legislature and became law. It provides, in relevant part:

> No person shall make or publish, or cause to be made or published, any false statement in relation to any candidate for nomination or election to public office, which is designed or tends to aid or to injure or defeat such candidate.

The statute also (1) prohibits false statements made in relation to ballot questions set to be submitted to voters and (2) provides that anyone found to have "knowingly" violated any provision of § 42 shall be subject to a fine of not more than $1,000 or imprisonment for not more than six months. M.G.L. c. 56, § 42.

### B. Factual Background

Defendant Mannal is the incumbent representative for the 2nd Barnstable District in the Massachusetts House of

Representatives. Mannal is also a practicing criminal defense attorney who receives appointments to represent clients in Massachusetts trial courts.

In the lead up to the November, 2014 election, Jobs First created and published several brochures and press releases strongly criticizing Mannal's legislative record. In particular, Jobs First circulated multiple brochures criticizing Mannal's apparent support for legislation concerning sex offenders. In one brochure, voters are encouraged to "[v]ote against Brian Mannal" after it accuses him of

> putting criminals and his own interest above our families [and wanting] to use our tax dollars to pay defense lawyers like himself to help convicted sex offenders.

Another brochure accuses Mannal of

> introduc[ing] legislation that weakens penalties against convicted sex offenders and uses taxpayer dollars to help them purge their names from sexual offender databases.

That same brochure concludes by asking "Why does Brian Mannal want to put our families at risk?", and each brochure includes a small disclaimer that reads "[p]aid for by Jobs First Independent Expenditure PAC, Melissa Lucas, Treasurer." Jobs First contends, however, that Lucas had nothing to do with the creation of these published materials.

On October 21, 2014, Mannal filed an application for a criminal complaint with the Barnstable District Court. Mannal's

application alleges that Lucas published or caused the publication of false statements by Jobs First in relation to his candidacy for re-election. The application also alleges that the two statements were "designed to injure or defeat" Mannal and therefore violated M.G.L c. 56, § 42. It further contends that "the mailer[s] inferred in no uncertain terms that [] Mannal sought to benefit financially from legislation that he had filed." Mannal asserts that he never handled a sex offender case and is not certified to do so.

A probable cause hearing on Mannal's application for a criminal complaint was scheduled for November 20, 2014 before a Clerk Magistrate. On October 27, 2014, plaintiffs filed a motion to dismiss the application, contending that the statute was facially unconstitutional. On October 30, 2014, the Barnstable District Court transferred the application to the Falmouth District Court. At Lucas's request, the probable cause hearing was postponed until December 18, 2014.

Mannal narrowly won re-election to his seat in the Massachusetts House of Representatives on November 4, 2014.

**C. Procedural History**

On December 5, 2014, plaintiffs filed a complaint in this Court seeking a declaratory judgment and injunctive relief and alleging that M.G.L. c. 56, § 42 is facially unconstitutional (Count I), constitutes viewpoint discrimination (Count II) and

is unconstitutionally vague (Count III). The complaint also alleges that the procedures of the state district courts result in a violation of substantive and procedural due process (Count IV) and raises an abuse of process claim against Mannal (Count V). On the same day, plaintiffs filed the instant motion for a temporary restraining order or preliminary injunction against the Clerk Magistrate of the Falmouth District Court who, incidentally, is not a party to these proceedings.

On December 12, 2014, the Court invited the parties to file supplemental briefing on the implications of the Younger abstention doctrine on plaintiffs' motion. On December 15, 2014, defendant Mannal filed a motion to dismiss based on Younger abstention.

The Court held a hearing on the subject motions on the day of this Memorandum & Order.

## II. Plaintiffs' Motion for Injunctive Relief

Plaintiffs contend that they face an imminent threat of prosecution and arrest for allegedly violating what they argue is a facially unconstitutional statute. They assert that § 42 has never been subjected to First Amendment scrutiny and that it is substantially similar to other state statutes recently struck down by federal courts in Ohio and Minnesota. They further argue that M.G.L. c. 56, § 42 severely restricts their rights to engage in political speech and thereby "chills" and "necessarily

tempers" their First Amendment rights. Plaintiffs thus assert that, because their free speech rights are in jeopardy of being irreparably harmed if a criminal complaint issues, they are entitled to injunctive relief.

Defendant Coakley filed a brief response that takes no position on the primary relief sought by plaintiff, namely an order enjoining the Clerk Magistrate from convening a hearing on December 18, 2014, and issuing a criminal complaint. Coakley's response merely contends that the Court should issue no declaration with respect to the constitutionality of the statute at this stage in the proceedings. Coakley suggests that such "ultimate relief" at the preliminary injunction stage is inappropriate.

Defendant Mannal opposes plaintiffs' motion and contends that § 42 and its procedures are distinguishable from the recently invalidated state statutes in Ohio and Minnesota. Moreover, he asserts that plaintiffs' statements in the brochure claiming that Mannal was "helping himself" through his legislative record were made with reckless disregard for the truth and constitute actual malice. Mannal thus exclaims that plaintiffs seek a sanctioned right to lie which is not protected under the First Amendment.

Mannal also asserts that the Younger abstention doctrine is applicable to plaintiffs' claims and that the complaint should be dismissed.

**A. Legal Standard**

**1. Injunctive Relief**

Under the familiar standard, a movant seeking injunctive relief must demonstrate that he

> is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

Voice of the Arab World, Inc. v. MDTV Medical News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). Even with this standard, "[a] preliminary injunction is an extraordinary and drastic remedy" that "is never awarded as of right." Voice of the Arab World, 645 F.3d at 32 (quoting Munaf v. Green, 553 U.S. 674, 689-90 (2008)). An "injunction should issue only where the intervention of a court of equity is essential in order effectually to protect" against otherwise irremediable injuries. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

**2. Younger Abstention**

As a threshold consideration, however, the Supreme Court has repeatedly recognized the tensions inherent in parallel judicial processes at the state and federal levels and has

outlined situations where the possibility of "undue interference" with state judicial proceedings cautions restraint by federal courts. See, e.g., Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013). The Supreme Court has been fearful that

> the restraining [of the state court] would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the constitution of the United States.

Steffel v. Thompson, 415 U.S. 452, 460-61 (1974) (citation and internal quotations omitted); see also Mass. Delivery Ass'n v. Coakley, 671 F.3d 33, 40 (1st Cir. 2012) (basic notions of comity and federalism are foundational principles of Younger abstention).

In Younger v. Harris, 401 U.S. 37, 41 (1971), the Court invoked this rationale to abstain from enjoining an ongoing state criminal prosecution. See also Samuels v. Mackell, 401 U.S. 66, 73 (1971) (in instances where injunctive relief would be impermissible under Younger principles, "declaratory relief should ordinarily be denied as well").[1]

Accordingly, when faced with a Younger scenario,

---

[1] The Younger doctrine has been expanded well beyond criminal proceedings to include certain civil actions and administrative proceedings, although in each instance the state proceedings must be "judicial in nature." See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 369 (1989).

> a federal court must abstain from reaching the merits of a case over which it [otherwise] has jurisdiction so long as there is (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding ... that (2) implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit.

Brooks v. New Hampshire Supreme Court, 80 F.3d 633, 638 (1st Cir. 1996) (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)); see also Sprint Commc'ns, 134 S. Ct. at 588 ("[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining [it]"); Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 32 (1st Cir. 2004) (state proceedings "should be respected" if federal rights can be asserted and resolved somewhere in the state proceedings).

In fact, federal courts must "abstain from interfering with state court proceedings even where defendants claim violations of important federal rights." In re Justices of Superior Court Dep't of Mass. Trial Court, 218 F.3d 11, 17 (1st Cir. 2000) (collecting cases); see Younger, 401 U.S. at 50-51 (First Amendment challenge). Younger abstention thereby ensures that federal courts will not "needlessly inject" themselves into ongoing state criminal proceedings. Brooks, 80 F.3d at 637-38.

It is also significant that a district court is entitled to raise abstention issues sua sponte. Ford Motor Co. v. Meredith Motor Co., 257 F.3d 67, 71 n.3 (1st Cir. 2001).

**B. Analysis**

Because only Melissa Lucas, and not Jobs First, is named as a defendant in the state proceeding, the Court will analyze plaintiffs' motion for injunctive relief with respect to the defendants separately.

**1. Melissa Lucas**

Lucas contends that the Court ought not to abstain under Younger and instead compares the status of the pending state court proceedings to the scenario in the Steffel case, where the Supreme Court held that abstention would be inappropriate when a party faces an imminent threat of actual arrest, prosecution or other enforcement action. Undoubtedly in such a context, a state proceeding is merely hypothetical and Younger abstention is unwarranted. Moreover, in that instance a federal court need not concern itself with disrupting parallel state court proceedings, as none in fact would be pending.

Unlike the scenario in Steffel, however, this is not a case in which an individual is being threatened with the prospect of arrest or state prosecution. See 401 U.S. at 475. Here, the machinery of the state judicial system has unquestionably been invoked and set in motion and a parallel proceeding is pending

against Lucas. See Younger, 401 U.S. at 41; see also Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2339 (2014) (referencing that the district court stayed the action under Younger while state administrative proceedings were pending). Thus, serious concerns about interfering with ongoing state court proceedings necessarily are implicated. See In re Justices of Superior Court, 218 F.3d at 17.

Many years ago, another session of this Court faced a similar scenario involving a pending proceeding in state court and opted to abstain under Younger and dissolve an already-issued federal injunction. Gannett Satellite Info. Network, Inc. v. Town of Norwood, 579 F. Supp. 108, 112-14 (D. Mass. 1984). In Gannett, a police officer filed an application for a criminal complaint in state district court against plaintiff, a newspaper publisher, for distributing papers in the Town of Winchester in violation of town by-laws. A court hearing had been scheduled but was continued at the request of plaintiff. Before the state hearing could be held, plaintiff filed suit in federal court and argued that the town's licensing law unconstitutionally infringed on its First Amendment rights.[2]

[2] The hearing eventually took place prior to the court's ruling in Gannett, however, the court's analysis of Younger focused on the fact that the federal case had been filed prior to the state court hearing. See id.; see also Brooks, 80 F.3d at 638 (noting that first factor in Younger inquiry is whether ongoing state proceeding was initiated prior to federal suit).

The plaintiff in Gannett argued that abstaining under Younger would be inappropriate because, when it filed its federal suit, the Town had merely sought an application for a criminal complaint. The complaint itself had not yet been issued. Id. at 113. Plaintiff relied on Mass. R. Crim. P. 3(a) which stated that "a criminal proceeding shall be commenced in the District Court by a complaint." Plaintiff argued that no criminal proceeding sufficient to precipitate Younger abstention had been filed when its federal suit was initiated. Id.

The Gannett court, in rejecting plaintiff's argument, noted that "application of the Younger doctrine does not depend on so wooden an approach to the date when a state criminal action begins." Id. Instead, by the time plaintiff had filed its federal suit, all of the appropriate, necessary steps had been taken to begin a formal criminal action in state court. That is, the application for a criminal complaint had already been filed with the state court and a hearing had been scheduled.

The Gannett decision held that

> the same concerns the Supreme Court cited in requiring abstention in Younger--notions of comity, federalism, and equitable restraint--militate against interfering with the criminal process in this case which has already begun.

Id. Moreover, the Gannett decision reasoned that a determination on the merits of the First Amendment issue would "likely result in some disruption of the State criminal justice

system, and could be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles." Id. (quoting Steffel, 401 U.S. at 462) (internal quotations omitted). The court thus concluded that a state criminal action was pending for purposes of Younger abstention.

The Court agrees with the reasoning of the court in Gannett that Younger abstention is warranted in this context. Plaintiffs have asked this Court to enjoin the Clerk Magistrate for the Falmouth District Court from conducting an already-scheduled probable cause hearing on Mannal's application for a criminal complaint against Lucas. Mannal filed his application almost two months ago. Since then the Barnstable District Court scheduled a hearing and transferred the pending case to the Falmouth District Court. The Falmouth District Court has rescheduled the hearing once, postponing it from November 20 to December 18, 2014. All of those events occurred prior to plaintiffs' filing of the instant federal suit.

Thus, there already has been significant interaction with the state court that has resulted in a pending state court proceeding. Taken as a whole, these interactions are sufficient to warrant Younger abstention as to Lucas even though a "criminal proceeding" is technically not commenced until the Clerk Magistrate issues a complaint. See Mass. R. Crim. P. 3(a). Nevertheless, "all necessary and proper steps to begin a formal

criminal action" in state court are underway and have been for some time. See Gannett, 579 F. Supp. at 113.

Moreover, plaintiffs have filed a motion to dismiss in the pending state case, arguing essentially, as they do here, that the state statute is unconstitutional and infringes on plaintiffs' First Amendment rights. Plaintiffs' filing in state court demonstrates that Lucas has an "adequate opportunity in the state proceedings to raise constitutional challenges." See Middlesex Cnty. Ethics Comm., 457 U.S. at 432.

At the hearing before the Clerk Magistrate, Lucas can present her First Amendment argument as grounds for quashing the criminal complaint. Moreover, in the event that a complaint issues, she will be able to raise federal constitutional defenses and again seek to have the case dismissed. See Rushia v. Town of Ashburnham, 701 F.2d 7, 9-10 (1st Cir. 1983). If that fails, she will have the opportunity to seek state appellate review of any adverse ruling. See Maymo-Melendez, 364 F.3d at 34-35.

This Court is confident that the courts of the Commonwealth will properly preserve federal constitutional guarantees. Were it instead to step in at this stage and enjoin the Clerk Magistrate from holding a probable cause hearing on an application for a criminal complaint that has been pending for over a month, it would certainly "disrupt[] ... the State

criminal justice system" and would very likely be interpreted (erroneously) as casting doubt upon the state court's "ability to enforce constitutional principles." Cf. Steffel, 401 U.S. at 462. Thus, it is inappropriate for this Court to interfere with the pending state court proceeding at this juncture or to prevent the state criminal justice system from conducting the scheduled hearing.

The fact that this case involves First Amendment rights does not alter the abstention analysis. Despite plaintiffs' argument that allowing the state hearing to take place would chill the exercise of their First Amendment rights,

> the existence of a chilling effect, even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action.

Younger, 401 U.S. at 51 (internal quotations omitted).[3] Moreover, there is no evidence in the record that would sufficiently implicate one of the very limited exceptions to Younger abstention. See Gannett, 579 F. Supp. at 113.

Accordingly, the Court will abstain from enjoining the state hearing scheduled against Lucas for December 18, 2014. Because the Court will exercise its duty to abstain under

[3] The Court notes that Mannal's filing of the application on October 21, 2014, did not impede plaintiffs' ability to speak out on issues during the remainder of the campaign and now that the election has occurred, it is unclear how the Clerk Magistrate's scheduled hearing will have any effect, much less a chilling effect, on plaintiffs' speech.

Younger, it need not reach the merits of the motion for injunctive relief or consider Lucas's substantive First Amendment arguments at this time. Greening v. Moran, 953 F.2d 301, 304 (7th Cir. 1992) ("To say that abstention is in order then is to say that [the court] should not address the merits, period.").

**2. Jobs First**

Mannal filed his application for a criminal complaint only against Lucas and, as such, Jobs First is not a party to the state court proceeding. The Court notes, however, that despite that fact, Jobs First and Lucas jointly filed the motion to dismiss the state court application just as though they had both been named. Nevertheless, no pending state proceeding sufficient to warrant Younger abstention exists against Jobs First. Therefore, the Court proceeds to consider the merits of Jobs First's request for injunctive relief.

A party seeking injunctive relief "bears the burden of establishing that the four [pertinent] factors weigh in its favor" and that it is therefore entitled to this extraordinary remedy. Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). For the sake of brevity, the Court skips to the second factor, the likelihood of irreparable harm in the absence of injunctive relief. As the First Circuit has remarked,

> We need not discuss three of these elements. In most cases--and this case is no exception--irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief. Inasmuch as the plaintiff has failed to demonstrate a realistic prospect of irreparable harm, she has not crossed that threshold.

Matos ex rel. Matos v. Clinton School Dist., 367 F.3d 68, 73 (1st Cir. 2004) (citation omitted); see also Braintree Laboratories, Inc. v. Citigroup Global Markets Inc., 622 F.3d 36, 43 (1st Cir. 2010) ("at least some positive showing of irreparable harm must [] be made"); 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ("Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."). Accordingly, the Court considers the likelihood of irreparable harm to Jobs First if the Clerk Magistrate is allowed to conduct a probable cause hearing on December 18, 2014.

Jobs First argues that it faces an imminent threat of irreparable harm if the state hearing proceeds because it has already had its free speech rights curtailed as a result of Mannal's application and the hearing will only lead to a "continued chilling effect" on such rights.

That argument is unavailing for several reasons. First, as Jobs First itself has pointed out repeatedly, it is not a named

defendant in the state court proceedings. Thus, it does not face the imminent prospect of a criminal complaint issuing against it. Moreover, even if it were named as a defendant in the state court proceeding, the November, 2014 election is history and, in fact, Jobs First had every opportunity to speak out on campaign issues. Finally, even if a complaint were filed against Jobs First, it would not be prevented from speaking out on political issues while the case is pending. In sum, Jobs First's free speech rights have not been chilled by the pending state proceeding against Lucas.

This analysis is further supported by the First Circuit's ruling in Rushia. See 701 F.2d at 9-10. In Rushia, a store owner appealed a district court's denial of a preliminary injunction after he claimed that he faced the imminent threat of prosecution and thus infringement of his free speech rights. Jobs First also claims such a threat. In affirming the denial of injunctive relief, the First Circuit Court of Appeals (Breyer, J.) noted that

> [T]he fact that [plaintiff] is asserting First Amendment rights does not automatically require a finding of irreparable injury ... [W]hile a state prosecution may sound like serious injury to the ordinary ear, it does not normally in and of itself constitute "irreparable injury" as a matter of law. The harm to the threatened defendant tends to be counterbalanced by the fact that the prosecution offers him a forum in which to make his legal arguments, by the fact that a state forum may be the more appropriate one, and by [] comity considerations.

Id. at 10. Thus, even if Jobs First were actually facing the threat of imminent prosecution, which it apparently is not, its alleged claim of irreparable harm is tenuous.

The Court need not venture further in its analysis. Jobs First's federal case may proceed but there is no justification for this Court to issue an "extraordinary and drastic remedy", i.e. a preliminary injunction, where none is warranted. See Voice of the Arab World, 645 F.3d at 32 (quoting Munaf, 553 U.S. at 689-90).

**III. Defendant Mannal's Motion to Dismiss**

Defendant Mannal has filed a motion to dismiss plaintiffs' complaint on the grounds that Younger abstention applies and thus the Court lacks jurisdiction over the entire suit.

As discussed above, however, the Court will abstain from enjoining the state hearing scheduled for December 18, 2014 only as to Lucas and will not entertain her requests for relief so long as a parallel state court proceeding is pending. Jobs First, on the other hand, may continue to pursue its claims in this Court and plaintiffs claim against Mannal for abuse of process will not be stayed. Accordingly, Mannal's motion to dismiss the entire complaint on Younger grounds will be denied, without prejudice.

**ORDER**

For the foregoing reasons, plaintiffs' motion for a temporary restraining order or preliminary injunction (Docket No. 2) is **DENIED** and defendant Mannal's motion to dismiss (Docket No. 11) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated December 17, 2014